No. 12009

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

---

HOERNER WALDORF CORPORATION OF MONTANA,
a Corporation, and THE TRAVELERS INSURANCE,
COMPANY, a Corporation,

        Plaintiffs and Respondents,

-vs-

BUMSTEAD-WOOLFORD COMPANY, a Corporation,

        Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
          Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Boone, Karlberg and Haddon, Missoula, Montana.
        Karl R. Karlberg argued, Missoula, Montana.
        Patrick F. Hooks argued, Townsend, Montana.

    For Respondents:

        Garlington, Lohn and Robinson, Missoula, Montana.
        Sherman V. Lohn argued, Missoula, Montana.

---

               Submitted:  December 3, 1971

               Decided: FEB 19 1972

Filed: FEB 19 1972

_Thomas J. Kearney_
                    Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by defendant from a judgment entered in the district court of Missoula County in favor of plaintiffs.

From the record it appears that the plaintiff Hoerner Waldorf Corporation was a defendant in an action brought by one Clarence Dutton for injuries sustained by him while he was employed by Bumstead-Woolford Company in the construction of a bleach plant at the Hoerner Waldorf pulp mill in Missoula, Montana. This action was settled by the insurance carriers for Hoerner Waldorf and thereafter they and Travelers Insurance Company, hereafter referred to as Travelers, brought this action against Bumstead-Woolford for indemnity of expenses and costs incurred by them on the ground that Bumstead-Woolford was obligated to indemnify Hoerner Waldorf and Travelers under an indemnity agreement drawn by Hoerner Waldorf on the reverse side of a purchase order.

The action was tried on stipulated facts before the court, sitting without a jury. The judge found in favor of the plaintiffs. A motion for amendment of findings, conclusions and judgment and exceptions to the findings were filed by the defendant but were overruled. The defendant appeals from the judgment.

Summarizing the stipulated facts it appears that Hoerner Waldorf in 1960 was in the process of expanding its bleach plant at its pulp mill in Missoula County, Montana. It requested bids on various work to be performed. Pursuant to such request, defendant Bumstead-Woolford submitted its quotation and on the same

date, by letter, Bumstead-Woolford set forth the terms for any additional work. The quotation and letter which were dated July 12, 1960, do not recite the assumption by Bumstead-Woolford of any obligation to insure or indemnify Hoerner Waldorf from any claims made against Hoerner Waldorf as a result of negligence of Hoerner Waldorf nor to indemnify Hoerner Waldorf for any other loss except Bumstead-Woolford's industrial accident coverage. On or about July 15, 1960, the plaintiff, Hoerner Waldorf, issued its purchase order confirming acceptance of the $109,255 price quoted by defendant Bumstead-Woolford, and referred to the quotation as the basis for the purchase order. This purchase order, on the reverse side under paragraph 11, provided for insurance and indemnification as follows:

"INSURANCE AND INDEMNIFICATION.

"All material as described in Item 5 and all design, tools, patterns, equipment, drawings and other information described in Item 4, furnished by Buyer, shall be protected against loss or damage by insurance on part of Seller which is acceptable to Buyer. The Seller is liable for any damage to property of the Buyer caused by negligence of the Seller or Contractor or any of their Agents, Servants or Employees, from any cause whatsoever. Seller agrees to indemnify Buyer against all liabilities, claims, or demands for injuries or damages to person or property, or for wages, unemployment insurance, social security taxes, or otherwise growing out of defective material or workmanship in the articles or materials, supplied herein or out of the performance of the contract resulting from acceptance of this purchase order.

"If this order requires the performance of any labor for Buyer, Seller further agrees to carry and to furnish upon request a certificate from its insurance carriers showing that it carries adequate Workmen's Compensation, Public Liability and Property Damage insurance cover-

- 3 -

age. Such certificate must show the amount
of each kind of coverage, name of each insurance
company and policy number and expiration date of
each policy. If Seller is self-insurer, Seller
must have a certificate thereof furnished direct-
ly to Buyer by the cognizant Department of the
Government of each State in which any such labor
is to be performed."

Bumstead-Woolford commenced work under its contract with

Hoerner Waldorf as described by the quotation. Clarence Dutton

was employed by Bumstead-Woolford as a pipefitter in the construc-

tion of the bleach plant. While Dutton was engaged in his em-

ployment for Bumstead-Woolford, who was engaged in the perform-

ance of its contract with Hoerner Waldorf, he was struck in the

head by a 2" x 6" plank which fell from a catwalk constructed by

Hightower & Lubrecht, an independent contractor of Hoerner Waldorf.

The parties agreed that neither Clarence Dutton nor Bumstead-

Woolford was negligent with respect to the injury to Clarence

Dutton.

At the time of the accident the metal tread of the cat-

walk which was to be supplied by Hoerner Waldorf had not been

installed because it had not been received at the plant, although

it was on order. Temporary planking had been installed by High-

tower & Lubrecht at the request of Hoerner Waldorf.

As a result of his being struck on the head by the fall-

ing plank, Dutton was injured. He requested and received benefits

of Workmen's Compensation provided by his employer, Bumstead-

Woolford, and an order approving the full and final compromise

settlement was entered into on April 24, 1961.

Dutton, on November 10, 1961, instituted an action in

United States District Court for the District of Montana, Missoula

Division, against Hightower & Lubrecht and Hoerner Waldorf. On April 24, 1963, the trial of that case resulted in a verdict for both defendants. Thereafter, various post-trial motions were filed and on September 5, 1963, an order was entered granting plaintiff a new trial.

A second trial was started on May 5, 1964, but was terminated by a mistrial. A third trial of the action was set for October 19, 1965, but before trial settlement negotiations were instituted which ultimately resulted in a settlement of $135,000, of which Travelers paid $25,000 on behalf of Hoerner Waldorf, Lloyds of London paid $55,000 on behalf of Hoerner Waldorf and $55,000 was paid by Hightower & Lubrecht.

Travelers incurred attorney's fees and defense costs of $10,825 and Hoerner Waldorf incurred expenses in the sum of $750 for loss of time of its employees during preparation for and attendance at the various trials in the Dutton suit.

Subsequently suit was filed in the district court of the fourth judicial district, Missoula County, Montana, wherein Hoerner Waldorf and Travelers claimed damages for settling the claim of Dutton and claimed reimbursement for court costs, attorneys' fees and expenses in the defense of the Dutton case. The theory of the action by Hoerner Waldorf is that the indemnity agreement on the reverse side of the purchase order required Bumstead-Woolford to indemnify Hoerner Waldorf from expense incurred in the action brought by Dutton against Hoerner Waldorf, and to defend any action brought by Dutton against Hoerner Waldorf.

The theory of Travelers was that it was subrogated to

the right of Hoerner Waldorf under the indemnity clause, even though Travelers was not a party to the purchase order and even though Dutton and Bumstead-Woolford were not negligent with respect to Dutton's accident and had no common-law liability for the injury to Dutton.

The action was submitted to the district judge on the agreed statement of facts and memorandums from the parties. The judge made findings of fact and conclusions of law on November 24, 1970.

Defendant filed exceptions to the findings and filed a motion to amend the findings of fact and conclusions of law. These were argued before the district court on December 14, 1970. The court failed to act within fifteen days after the argument and pursuant to Rule 59, M.R.Civ.P., superseding section 93-5606, R.C.M. 1947, the exceptions were deemed overruled and the motion to amend denied. This appeal followed.

Defendant raises 15 issues on appeal. Plaintiffs argue that the determinative issues are three in number. Our review of the record discloses but one: that being, did defendant contract to indemnify the plaintiff, Hoerner Waldorf, from any and all loss or damages sustained by such plaintiff while the defendant was engaged in performing work and furnishing material on the job in question. A review of the exhibits in this case reveals that the quotation furnished by defendant resulted from negotiations between the defendant's employee, a Mr. Lysne and Hoerner Waldorf's employee, a Mr. Sandberg, and consisted of a four page quotation accompanied by a two page letter. The quotation documents are

quite comprehensive in setting forth the materials to be furnished, their quality and specifications as well as the scope of work to be performed by the defendant and that work which the defendant would anticipate would be performed by others. A completion date, billing arrangements, as well as terms for furnishing extra work, and the letter accompanying the quotation, set forth in exact detail the cost at which the additional materials would be furnished, including a provision for passing on discounts received from defendant's suppliers for prompt payment. Provisions were also made for the payment for rental equipment, expense, traveling and living expenses as well as a percentage ratio to be applied for the payment of taxes, industrial accident insurance, unemployment insurance, casualty insurance, as well as an accounting expense, and goes on to state:

> "Our normal insurance coverage which is subject to your approval provides for property damage at $250,000.00 and public liability at $250,000/$500,000."

This quotation was issued on July 12, 1960. On July 15, 1960, the plaintiff issued its purchase order accepting the quotation offered. A printed purchase order form was utilized for this purpose by the plaintiff. The face of the order reads in typewritten words:

> "Perform work and supply materials per quotation A-4378-A and attached letter.
>
> "Price, $109,255.00
>
> "CONFIRMING ORDER"

The attached letter reads in pertinent part:

"P.O. to Bumstead-Woolford Co.
        1411 Fourth Ave.
        Seattle, Washington

"Perform work and supply materials to install piping, instrumentation, and machinery as outlined in your quotation A-4378-A and referred to as contract 326 with the following modifications and changes:

"It is understood that when your work is completed the bleach plant will be ready to process pulp except for the electrical installation. This means all piping and machinery will be complete, tested and ready for operation.

"A performance bond will be furnished. The cost of the bond to be an addition to the contract price.

"<u>Evidence of insurance coverage in the following amounts</u> will be submitted:

>               "Property damage - $250,000
>               "Public liability- $250,000/500,000"   (Emphasis ours.)

The rest of the letter relates to the specified work to be performed. Nowhere in the typewritten portion of the plaintiff's purchase order nor in the attached letter was any mention of indemnification made. To the contrary the purchase order issued by the plaintiff accepted the terms and conditions of the defendant's offer and the letter accompanying the purchase order called the defendant's attention to specific requested modifications which we have emphasized in setting forth the language of the correspondence. It is plaintiff's contention however, that the following clause, appearing on the reverse side of its purchase order, had the effect of incorporating the indemnity clause set forth previously in this opinion as paragraph 11. This clause numbered paragraph 1, reads:

>               "1. ACCEPTANCE. This order constitutes an
>               offer by the Waldorf-Hoerner Paper Products
>               Company (hereinafter referred to as 'Buyer')
>               upon the terms and conditions and subject to

instructions appearing on the face and reverse
hereof. To constitute a binding contract this
offer must be accepted by the Seller by execu-
tion of the acknowledgment form attached hereto.
This acknowledgment form must be returned to
us by return mail confirming requested delivery
dates or stating best possible delivery for
Buyer's acceptance. No other form of acceptance,
verbal or written, will be valid or binding up-
on the Buyer. No deviation from this or any
of the terms hereof shall be binding upon the
Buyer without prior written approval of the
Buyer. The Buyer will not be responsible for
goods delivered or services rendered except on
a properly authorized or signed purchase order
form."

This contention must fail. It is fundamental contract
law that the written or typewritten provisions of a contract
will take precedence over the printed provisions of a contract.
17A C.J.S Contracts § 310.

More specifically, section 13-717, R.C.M. 1947 provides:

"Where a contract is partly written and partly
printed, or where part of it is written or
printed under the special directions of the
parties, and with a special view to their in-
tention, and the remainder is copied from a
form originally prepared without special ref-
erence to the particular parties and the par-
ticular contract in question, the written parts
control the printed parts, and the parts which
are purely original control those which are
copied from a form. And if the two are absolute-
ly repugnant, the latter must be so far disregarded."

Applying the statute to the facts in the record we can
only conclude that the typed provisions of plaintiff's confirm-
ing purchase order control the interpretation of the agreement
between the parties.

The typewritten portion of the purchase order specifi-
cally incorporates two other documents by reference. First the
defendant's quotation and second the plaintiff's own letter which

conditioned specifically the acceptance of the defendant's quotation.

Neither of these two documents incorporate the terms on the face or reverse side of the purchase order.

A contract will not be held to incorporate stipulations embodied in another contract save insofar as the same are specifically set forth or identified by reference. State Bank of Darby v. Pew, 59 Mont. 144, 195 P. 852.

Thus we see that the controlling language of the plaintiff's purchase order does not effect an incorporation of the printed terms and conditions of the purchase order form itself but had only the effect of accepting the defendant's quotation as expressly modified by the terms of the plaintiff's letter.

Consideration of the format of the printed form in question buttresses this conclusion. The printed form is not particularly adapted for the type of contract contemplated between the parties. The space wherein the typewritten language appears is the space provided for the quantity, description, unit price, and the extention of the unit price of materials ordered.

Thus in viewing the contract document as a whole it is clear the intended effect of the plaintiff's purchase order form, with respect to the terms and conditions contained therein, is at best indefinite.

This conclusion is fatal to plaintiff's assertion that in accepting the purchase order defendant was bound by the indemnity clause contained therein; for the law requires that the intention to indemnify must be stated in clear and definite language.

42 C.J.S. Indemnity § 5; Lesofski v. Ravalli Co. Elec. Coop., 151 Mont. 104, 439 P.2d 370.

Plaintiff's contention that paragraph 1 of the purchase order entitled "Acceptance" fulfills this requirement is without merit as this "Acceptance" clause itself appears on the reverse side of the unincorporated form in question.

Plaintiff finally contends that section 13-707, R.C.M. 1947, which provides:

> "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

requires that the terms of the purchase order be read into the contract.

Where several instruments are executed at the same time by the same parties, for the same purpose, and in the course of the same transaction they constitute in the eye of the law but one instrument and will be read and construed together as if they were as much one in form as they are in substance in the absence of anything to indicate the contrary intention. The weakness in plaintiffs' argument is that the language chosen by Hoerner Waldorf to express its intention negates such consideration of the terms of its own purchase order. 17A C.J.S. Contracts § 298. See also Lambert v. Lambert, 182 F.2d 858, Eighth Cir.; Four-Three-O-Six Duncan Corp. v. Security Trust Co., (Mo. 1963), 372 S.W.2d 16.

The district court's finding of fact, that the indemnification clause was operative, was thus erroneous. Its conclusion

of law, that it applied to the loss asserted, is likewise incorrect and in view of this holding all other issues raised by the defendant on appeal become moot.

The judgment is reversed and the district court is directed to enter judgment in favor of defendant, dismissing the action.

_James T. Harrison_
Chief Justice

We concur:

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_

_Wesley Castles_
Associate Justices